UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELO J. MAROTTA,

          Plaintiff,

                               Case No.  15-cv-14295

vs.                              HON.  GEORGE CARAM STEEH

FORD MOTOR CO.,

          Defendant.

_____/

OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DOC. 17)

Plaintiff Angelo J. Marotta alleges two counts of retaliation, under

Title VII (Count I) and Michigan's Elliott-Larsen Civil Rights Act (ELCRA)

(Count II), against his employer, defendant Ford Motor Company. This

matter is presently before the Court on Ford's motion for summary

judgment. (Doc. 17). Oral argument was held on July 13, 2017. For the

reasons stated below, Ford's motion is GRANTED.

## I. Background

Mr. Marotta began working for Ford on August 2, 1976. Mr. Marotta

served as chairman of the Brownstown UAW Unit from 2005 through 2011.

During his tenure, Mr. Marotta handled grievances for Ford employees,

including his wife, Alanna Marotta. He maintained grievance files that

contained personal identifying information (PII)[1] including hourly employees' names, Social Security numbers, home addresses, and home phone numbers.

Mrs. Marotta filed a grievance in 2006 that was ultimately unsuccessful. She thereafter initiated medical leave and filed multiple EEOC charges. In 2014, Mrs. Marotta filed suit against Ford and three of its employees in this Court. On March 19, 2015, Mr. Marotta was deposed for his wife's lawsuit. (Doc. 18-1 at PageID 335). In April 2015, Mrs. Marotta purportedly asked Mr. Marotta to deliver a folder of documents to her attorney, Jeffrey Burg. These documents contained PII of approximately 120 Ford employees. (Doc. 18-3 at PageID 414). Mr. Marotta claims that he did not know what information was contained in the folder. (Doc. 17-2 at PageID 140). Ford asserts that Burg showed Ford these documents on April 16, 2015, at which time discovery had concluded. (Doc. 8-5 at PageID 480). Ford further claims that Burg did not provide Ford with copies of these documents until April 23, 2015. (*Id.*).

Ford asserts that this is the first time that it became aware that any documents produced by Mrs. Marotta contained PII. Upon this realization,

---

[1]Ford defines PII as "any information that can be associated with a unique individual or that can be used to identify, locate, or contact a unique individual." (Doc. 18-3 at PageID 421). Ford states that of all types of PII, it is particularly concerned about protecting Social Security numbers. (Doc. 18-3 at PageID 413).

Ford's counsel forwarded the documents to Brownstown HR Manager Mary Carol Moody. Moody determined that the documents contained private PII and should not have been accessible to Mrs. Marotta. Ford became suspicious of Mr. Marotta because he delivered the documents to Burg and had access to these types of documents containing PII as UAW Chairperson. Moody and Jennifer Cavill interviewed Mr. Marotta in the Labor Relations Office on May 7, 2015. (Doc. 17-2 at PageID 63-66). Mr. Marotta stated that Mrs. Marotta acquired the documents that he delivered to Burg from Mr. Marotta, CAC binders,[2] supervisors, other employees, and the region. (Doc. 17-2 at PageID 179).

Ford asked Mr. Marotta to return the documents containing PII. (Doc. 17-2 at PageID 181). Mr. Marotta responded that the documents were in Burg's possession or within the CAC binders stored in the Marotta's home. (*Id.*). Mr. Marotta agreed to return home, search for documents containing PII, and, if he found any such documents, return them to Ford. (*Id.*). Moody suspended Mr. Marotta pending further investigation. (Doc. 18-3 at PageID 416).

---

[2]The "CAC binders" refer to a compilation of documents that were assembled by the UAW for Mrs. Marotta in connection to an unspecified grievance.

Mr. Marotta filed a charge with the EEOC on May 14, 2015. He thereafter asked Mrs. Marotta to obtain copies of the documents containing PII that were stored at Burg's office. (Doc. 17-2 at PageID 156). Mrs. Marotta furnished Mr. Marotta with copies, which he provided to the EEOC, (*id.*), and two attorneys, (Doc. 17-2 at 160).

Between May 12, 2015 and May 27, 2015, Ford made six demands to Mr. Marotta that he return the documents containing PII. (Doc. 18-5 at PageID 491-525). Mr. Marotta did not return the documents. Ford learned that Mr. Marotta had obtained copies from Burg and shared them with the E.E.O.C. and two attorneys. (Doc. 18-3 at PageID 418). Ford ultimately filed an emergency motion to compel the return of all originals and copies of the documents containing PII. Ford also notified its employees about the compromised PII and provided credit insurance in case identity theft results in monetary losses. (Doc. 18-3 at PageID 414).

Moody continued to investigate. She located the CAC files and discovered that the Marottas had two CAC booklets; one from 2009 and one from 2010. (Doc. 18-3 at PageID 416). Moody compared the CAC documents to the documents that Burg provided on April 23, 2015 and concluded that, while some of the Burg documents appeared in the CAC folders, others did not. (Doc. 18-3 at PageID 417). Moody concluded that

Mr. Marotta's failure to cooperate and return the documents mandated discharge. (Doc. 18-3 at PageID 419). Moody consulted with two Ford managers who concurred with her conclusion. (Doc. 18-3 at PageID 418). On June 25, 2015, Moody informed Mr. Marotta of his discharge, which was effective as of May 7, 2015. (Doc. 18-3 at PageID 419).

Mr. Marotta filed a grievance on June 29, 2015, and a NLRB charge on September 29, 2015. On September 8, 2015, the EEOC advised Mr. Marotta that it was dismissing his charge, stating that Mr. Marotta was "suspended for a legitimate-non-discriminatory reason, violation of confidential and personal data. When your employer interviewed you regarding this breach of information, you admitted partial responsibility for some of the most offending documents . . . . You have not returned any documents, nor have you signed an affidavit provided to you confirming that you had not further disseminated the documents." (Doc. 17-4 at PageID 323). The NLRB dismissed Mr. Marotta's charge on November 2, 2015. (Doc. 17-4 at PageID 326). Mr. Marotta filed the instant lawsuit on December 9, 2015. (Doc. 1).

Mr. Marotta continued to pursue an internal grievance under the Ford-UAW Collective Bargaining Agreement grievance procedure. He claimed that his employment discharge did not satisfy the CBA contractual

standard for just cause. A hearing was conducted on February 21, 2017 and accompanied by post-hearing briefs by Ford and UAW Local Union 600. (Doc. 25-2 at PageID 732). The Umpire evaluated whether there was just cause for Mr. Marotta's discharge. (Doc. 25-2 at PageID 743). On May 2, 2017, Umpire Charles F. Ammeson ordered Mr. Marotta reinstated from his May 2015 misconduct discharge with back pay and an expunged disciplinary record. (Doc. 25-2 at PageID 761).

## II. Legal Standard

Rule 56(c) empowers a court to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc) (citing Fed. R. Civ. P. 56(c)). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distrib. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere allegations or denials in the non-movant's pleadings will not meet this

burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. There must instead be evidence from which a jury could reasonably find for the non-movant. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (citing *Anderson*, 477 U.S. at 252).The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

## III. Analysis

Marotta alleges two counts of retaliation; the first under Title VII and the second under the ELCRA. "Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (citing *Hall v. State Farm Ins. Co.*, 18 F. Supp. 2d 751, 766 (E.D. Mich. 1998)).

"To establish his claim of retaliation, [Mr. Marotta] may use either direct evidence that [Ford] intentionally discriminated against him or by presenting circumstantial evidence, following the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting analysis." **Galeski v. City of Dearborn**, 690 F. Supp. 2d 603, 620 (E.D. Mich. 2010).

"[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Direct evidence "does not require the fact finder to draw any inferences to reach [the] conclusion" that discrimination motivated the employer's actions. *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

Marotta alleges that there is direct evidence that he was fired for helping his wife's case because Cavill, defendant's employee, said that Marotta was fired for sharing documents containing PII with Burg and the E.E.O.C. Marotta's allegation is insufficient to defeat defendant's motion for summary judgment because this evidence does not require the conclusion that unlawful discrimination was at least a motivating action in defendant's actions. Marotta may have been terminated based on defendant's belief that he removed PII from the workplace and failed to return it, independent of the PII's involvement in his wife's lawsuit. The Court shall therefore proceed to the McDonnell Douglas burden-shifting analysis.

"The McDonnell Douglas burden-shifting consists of three stages."

*Galeski*, 690 F. Supp. 2d at 620. First, a plaintiff must demonstrate a *prima facie* case, *id.*, by establishing that

> (1) [he] engaged in an activity protected by Title VII;
> (2) this exercise of protected rights was known to
> defendant; (3) defendant thereafter took adverse
> employment action against the plaintiff, or the
> plaintiff was subjected to severe or pervasive
> retaliatory harassment by a supervisor; and (4)
> there was a causal connection between the
> protected activity and the adverse employment
> action or harassment.

*Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007)

(citing *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir.

2000)). If the plaintiff is able to establish a *prima facie* case, "the burden

shifts to the defendant to articulate some legitimate, non-discriminatory

reason" for the adverse employment action. *Johnson v. Univ. of Cincinnati*,

215 F.3d 561, 573 (6th Cir. 2000) (internal citation and quotation omitted). If

the employer articulates a legitimate, non-discriminatory reason, "then the

plaintiff must prove that the proffered reason was actually a pretext to hide

unlawful discrimination." *Id.*

Ford does not challenge Mr. Marotta's ability to establish the first

three elements of his *prima facie* case. Instead, Ford focuses on the casual

connection between Mr. Marotta's testimony in his wife's case, the April 16,

2015 document delivery, and Mr. Marotta's suspension. "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533. "[E]vidence that the defendant treated the plaintiff differently from identically situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Allen v. Michigan. Dep't of Corr.*, 165 F.3d 405, 413 (6th Cir. 1999).

Marotta attempts to establish casual connection based on temporal proximity; stating that he was terminated 49 days after his deposition and 21 days after he delivered documents to Burg. The Sixth Circuit recognizes that, in some circumstances, temporal proximity alone is sufficient to establish causal connection. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524 (6th Cir. 2008). This is so in "certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time." *Id*; *see also Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 506 (6th Cir. 2014) (finding that adverse employment action occurring a day after the employer learns

of the protected activity is sufficient to establish casual connection). "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey*, 516 F.3d at 525; *see also Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008) (recognizing that a plaintiff must offer additional evidence of retaliation where the adverse employment action occurred two months after the employer learned about the protected activity). Marotta asserts that he was suspended 49 days after his deposition and 21 days after he delivered documents to Burg. The temporal proximity here is not "acutely near in time." *Mickey*, 516 F.3d at 524. Marotta cannot establish causal connection based on temporal proximity alone. *Id.*

Marotta also asserts that he was treated differently than other Ford employees, including his wife and Charmeka Boulware, whose names were associated with the PII documents he delivered to his wife's attorney. Marotta alleges that his wife produced a number of documents containing other employees' PII during the discovery phase of her lawsuit, but Ford did not act. Ford responds that it did not investigate or punish Mrs. Marotta because it did not know that she had PII. Ford alleges that Marotta's wife

turned over one or two documents with other employees' PII and Ford did not notice it when reviewing discovery. Ford further asserts that this small amount of PII is distinguishable from the 120 pieces of PII that Mr. Marotta delivered to Burg.

Marotta further argues that Boulware was alleged to have PII but was not terminated nor investigated as extensively as Marotta. Ford explains that Boulware was treated differently because, unlike Marotta, Boulware did not admit that she possessed other employees' Social Security numbers within her CAC books. (Doc. 21-3 at PageID 648-49; Doc. 25-3 at PageID 763-64). As such, Ford did not continue to request that Boulware return PII. In contrast, Ford states that Marotta admitted to possessing PII, and therefore, Ford took additional measures to ensure that it was returned.

Marotta's allegations of differential treatment fail to establish causal connection. Marotta's wife and Boulware were not identically situated employees. Unlike Boulware, Marotta admitted to possessing PII, (Doc. 17-2 at PageID 63, 65), and failed to respond to multiple requests to return it.[3]

---

[3]An Umpire issued an opinion on the grievance regarding Mr. Marotta's discharge on May 2, 2017, (Doc. 25-2), after this motion had been fully briefed, but prior to oral argument on July 13, 2017. In a supplemental brief filed 80 minutes before oral argument, Mr. Marotta's attorney asserted that certain issues in the Umpire's report were "identical" to issues litigated in this case, including whether Ford's investigation was fair and objective; whether Ford intended to punish Mr. Marotta for providing his wife with documents for her lawsuit; and whether the circumstances warranted Mr. Marotta's discharge. (Doc. 26 at PageID 766). Mr. Marotta's brief does not connect any of these issues, or any other portion of the Umpire's report, with anything at issue in defendant's motion for summary judgment. Out of an abundance of caution, the Court considered whether the Umpire report impacts this Opinion's causation analysis. The Umpire determined that Boulware possessed "PII outside the workplace," (Doc. 25-2 at

Ford ultimately sought a court order to ensure that the PII was returned. Mr. Marotta is also distinguishable from his wife. He possessed significantly more PII than she did. In sum, Marotta's arguments do not establish that "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 133 S. Ct. at 2533. Mr. Marotta has failed to establish a *prima facie* case.

## IV. Conclusion

For the reasons stated above, defendants' motion is GRANTED.

IT IS SO ORDERED.

Dated:  March 26, 2018

<u>s/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 26, 2018, by electronic and/or ordinary mail.

<u>s/Marcia Beauchemin</u>
Deputy Clerk

---

PageID 757) and "was not disciplined, despite the fact that she did not return the CAC Binder," (Doc. 25-2 at PageID 758). The Court cannot conclude that Boulware possessed PII within her CAC Binder such that she should have been punished. It is not clear that Boulware's CAC binders contained PII. But, even if she did possess PII, unlike Mr. Marotta, Boulware did not state that she had ever possessed any Social Security numbers or PII, much less an amount as large as Mr. Marotta delivered to Burg. Thus, the Court concludes that the Umpire's report does not refute the determination Boulware is not a similarly situated employee.